D. C. METSKER, *as Mayor of the City of Topeka, et al.,* v. GEORGE T. NEALLY.

1. CITY ENGINEER — *Suspension.* The mayor of a city of the first class does not have the authority to suspend the city engineer.

2. OFFICE — *Illegal Suspension — Mandamus. Mandamus* is the proper action to restore an officer to an office from which he has been illegally suspended, and by the same action all the records, instruments and insignia of office of which he has been deprived by an illegal suspension, may be restored to him.

*Error from Shawnee District Court.*

THE opinion states the case.

*W. A. S. Bird,* city attorney, *A. Bergen,* and *W. C. Webb,* for plaintiffs in error.

*Rossington, Smith & Dallas,* and *W. P. Douthitt,* for defendant in error.

Opinion by HOLT, C.: This is an action in mandamus. The alternative writ sets forth substantially that George T. Neally was the city engineer of the city of Topeka, a city of the first class; that on the 3d day of July, 1888, D. C. Metsker, as mayor, attempted to suspend him from his office, and place therein William Tweeddale; and that John F. Carter, as city marshal, acting in concert with the mayor, forcibly and unlawfully deprived plaintiff of his office-room, books, papers, records, etc., and prevented him from exercising the duties of his office. The defendant moved to quash the writ, which was overruled by the court, and, they declining to make any further return, the alternative writ was made peremptory. The defendants, plaintiffs in error, excepted to this judgment, and bring the case here for review.

The defendants say, first, this action cannot be maintained against them, claiming that the plaintiff was simply suspended from his office, not removed; in their brief they seek to make a distinction between the authority to amove a city officer and to suspend him. They claim that the authority to amove a city officer requires a greater amount of power than to simply suspend him; that a mayor, by virtue of his office, and as an incidental and inherent power thereof, can at any time suspend an officer, even though he may have no power given by statute or ordinance to amove him. They cite authorities which are to the effect that the power to suspend is included in the power to amove. We can readily believe that the greater power to amove might include the lesser one to suspend, but we have failed to notice any instance where the power to amove

is not conceded that the authority to suspend is admitted. In this instance the plaintiff was not suspended pending any examination of charges against him, which if found true would have been grounds for a removal; he was suspended without charges against him, and without notice.

We cannot accept the claims of defendants as to the wide difference between removal and suspension from a municipal office. In its effects, so far as the merits of this action are concerned, the plaintiff would be deprived of his office whether removed or suspended, in one way permanently, in the other for an indefinite and uncertain time. In some instances a suspension would practically be equivalent to a removal; it would be the case where the duration of the suspension extended beyond the term for which the officer suspended was elected or appointed. We fail to see any difference between an illegal removal and an illegal suspension, so far as this action is concerned, except in the possible difference of time the officer would be deprived of the possession and enjoyment of his office; certainly when it comes to the remedies for the restoration of an officer unlawfully removed or unlawfully suspended, we cannot perceive why the remedy in one case should not be applicable in the other. If the mayor exceeded his powers in suspending plaintiff, and the city marshal, as an officer, and the *de facto*, or as defendants style him the "*ad interim* engineer," assist in keeping him out of the lawful occupation and peacable possession of the same, then this writ was properly issued.

It fact it is not seriously disputed by the defendants that *mandamus* would be the proper remedy to restore a party to an office from which he had been illegally removed. The same reasons given to sustain this remedy in cases of removal, apply with equal force where the occupant of an office had been illegally suspended. If the title to this office were in dispute, the action to determine it would probably be *quo warranto;* but it is admitted that the plaintiff was the city engineer by regular appointment, and in the actual and lawful possession and enjoyment of the office. There is no

question of a contested election or disputed right to this office, except as it arises from the suspension alone. The plaintiff up to July 3d was the city engineer by undisputed right: was he legally or illegally suspended?—that is the sole question to be decided in this action. We believe *mandamus* is the proper action to restore an officer to his office when he, having the actual possession and undisputed right to the same, is illegally ousted therefrom, whether by removal or suspension. (*The State, ex rel., v. Common Council*, 9 Wis. 254; *The State v. Jersey City*, 1 Dutch. 536; *Rex v. Barker*, 3 Burrows, 1266; *Fuller v. Trustees*, 6 Conn. 532; *Howard v. Gage*, 6 Mass. 461; *In re Strong, Petitioner*, 37 id. 484; *County Court v. Sparks*, 10 Mo. 118; *Commonwealth v. Guardians, etc.*, 6 Serg. & R. 468; *Milliken v. City Council, etc.*, 54 Tex. 388; *Ex parte Wiley*, 54 Ala. 226; Dill. Mun. Corp. § 248, and note; High Ex. Rem., §§ 67, *et seq.*, and 407–409.)

If the suspension of plaintiff was unauthorized there could have been no vacancy to fill, and the appointment of Tweeddale was without authority of law; and plaintiff's office-room, books, records, instruments, insignia, etc., etc., having been taken from him by reason of such illegal suspension, it follows that a restoration to office should be accompanied by a restoration of all things pertaining to the office of which he had been deprived; for this relief *mandamus* is the proper remedy. (*Atherton v. Sherwood*, 15 Minn. 221; *The People, ex rel., v. Kilduff*, 15 Ill. 492; *The People, ex rel., v. Head*, 25 id. 325; *Trustees, etc., v. Fogg*, 78 Ind. 269; *Nelson v. Edwards*, 55 Tex. 389; High Ex. Rem., § 73, *et seq.;* Dill. Mun. Corp., § 302.)

The vital question to be determined in this case is, whether the mayor had authority to suspend plaintiff from the office of city engineer. There is no statute nor ordinance of the city *in hæc verba*, giving him the power to suspend the city engineer from his office and duties. The statute provides that he may remove the marshal, assistant marshal, and any policeman—these, and these only, of the city officers. (Comp. Laws of 1885, ch. 18, § 72.) The plaintiff argues that because

these officers are named no other officers can be removed or suspended by him, citing the well-known rule that the naming of one excludes all others; the defendants, admitting the general rule, deny its application in this case. They say that the provisions in regard to the removal of the marshal, etc., are found in article 5 of chapter 18, while the powers and duties of the mayor are defined under article 4, and this reference to the mayor in article 5 is only incidental and does in no way tend to limit the powers of the mayor as defined in article 4. They cite as showing the powers of the mayor, §§ 39 and 47:

"SEC. 39. The mayor shall preside at all the meetings of the council, except as herein otherwise provided, and shall have the superintending control of all the officers and affairs of the city, and shall take care that the ordinances of the city are complied with."

"SEC. 47. The mayor shall be active and vigilant in enforcing all laws and ordinances for the government of the city; and he shall cause all subordinate officers to be dealt with promptly for any neglect or violation of duty."

Section 39 gives him the superintending control over all the officers of the city, and the defendants contend that would empower him to suspend; that the power to do so would be a necessary adjunct of the authority to control. We are of the opinion that authority to control would not confer the power to suspend; it does not to remove, evidently, for if it gave the power to remove there would have been no necessity for an express provision for removing the marshal, etc. In § 47 it is provided that he shall cause all subordinate officers to be dealt with promptly for any neglect or violation of duty, not that he shall deal with them himself, but *shall cause* such officers to be dealt with, presumably by the proper authority.

We are of the opinion that the power to amove is lodged in the corporation itself, and must be exercised by it at large, unless such power has been delegated to some officer or officers thereof by statute or ordinance. The governing and controlling power of a city is lodged in the mayor and council ordinarily, and therefore the power to amove rests with them

jointly, there being no such authority given to the mayor in express terms, or inferentially even, as we understand and interpret the statute. (Dill. Mun. Corp., §§ 241–3, and authorities there cited.) In the absence of such provision, the mayor alone, being only a part of the governing power of the city, could neither remove nor suspend the city engineer; therefore his order suspending the plaintiff on the 3d of July from the office of city engineer was illegal and void.

We think the judgment of the court was correct, and recommend that it be affirmed.

By the Court: It is so ordered.

All the Justices concurring.