

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

April 6, 2004

The Honorable Jane Nelson
Chair, Health & Human Services Committee
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0175

Re: Consequences for a municipality if five of its seven council members are removed at a recall election (RQ-0156-GA)

Dear Senator Nelson:

You ask about the consequences for a home-rule municipality if five of its seven council members are removed at a recall election.[1] You indicate that Haltom City, a home-rule municipality, held an election on February 7, 2004, which resulted in the recall of five of seven elected council members.

The Haltom City charter provides that the "governing body of the city shall consist of a mayor and seven (7) council members." HALTOM CITY, TEX., MUNICIPAL CHARTER, art. III, § 3.01 (2001). The charter further states that "[a] quorum will be established by the presence of at least five (5) members. The mayor's presence may not be counted toward a quorum." Id. § 3.08. Article VI of the charter provides for the recall of city officials.

Recall is initiated by a petition to the council of "at least twenty-five (25) per centum of the number of votes cast at the last regular municipal election of the city, but in no event less than two hundred fifty (250) such petitioners." Id. art. VI, §§ 6.02-6.05. "If the officer whose removal is sought does not resign then it shall become the duty of the city council to order an election," to be held on "the next state uniform election date that is not less than forty-five (45) days from the date such petition was certified to the city council." Id. § 6.07. Five council members were recalled in the election of February 7, 2004. See Brandon Formby, City in Quandary After Recall Results, DALLAS MORNING NEWS, Feb. 20, 2004, at 6B. Section 6.09 of the charter provides that "[i]f a majority of the votes cast at such an election be for the recall of the person named on the ballot, he shall . . . be deemed removed from office and the vacancy shall be filled as vacancies in the city council are filled." HALTOM CITY, TEX., MUNICIPAL CHARTER, art. VI, § 6.09 (2001). The scheduled election to fill the vacant seats will occur in May 2004, the state's next uniform election date. See id. § 6.07.

---

[1]Letter from Honorable Jane Nelson, Chair, Senate Health & Human Services Committee, to Honorable Greg Abbott, Texas Attorney General (Dec. 17, 2003) (on file with Opinion Committee) [hereinafter Request Letter]; Request Letter also available at http://www.oag.state.tx.us.

You first ask whether each of the five council members who were removed by the voters "continue to serve in office under Article 16, Section 17 of the Texas Constitution until his successor is elected and qualifies at the next regular election in May of 2004." Request Letter, *supra* note 1, at 2. That provision declares that "[a]ll officers within this State shall continue to perform the duties of their offices until their successors shall be duly qualified." TEX. CONST. art. XVI, § 17. In *Willmann v. City of San Antonio*, 123 S.W.3d 469 (Tex. App.–San Antonio 2003, pet. denied), the court considered a complaint of three San Antonio municipal judges who challenged a city ordinance providing that "all persons presently holding an appointed position as judge but who were not listed in the ordinance would not be reappointed to their office." *Id.* at 472. The court, citing *Manning v. Harlan*, 122 S.W.2d 704, 707 (Tex. Civ. App.–El Paso 1938, writ dism'd), held that "the right to holdover does not reside in one who has been removed from office," and that the ordinance in question "effectively removed appellants from office." *Willmann*, 123 S.W.3d at 481.[2] In the situation you pose, the five council members have been removed from office not merely by operation of a municipal ordinance, but by the voters in an election held pursuant to a city charter provision that provided for the recall of municipal officers. The electorate expressed a clear desire that these individuals were to be immediately ousted from their respective offices. We conclude that the five council members who have been removed from office by the voters do not hold over until their successors have been elected and qualified. Rather, they ceased to hold office as of the date the results of the recall election were certified. Were we to find otherwise, the will of the voters would be thwarted.

Your second question is premised upon a "yes" answer to your first question. Accordingly, we need not address it.

Finally, you ask whether, following the removal of the five council members, a quorum of the council exists to conduct business until the May 2004 election. The Open Meetings Act, chapter 551 of the Government Code, defines "quorum" as "a majority of a governmental body, unless defined differently by applicable law or rule or the charter of a governmental body." TEX. GOV'T CODE ANN. § 551.001(6) (Vernon Supp. 2004). As we have noted, section 3.08 of the Haltom City municipal charter defines "quorum" as "the presence of at least five (5) members," adding that the "mayor's presence may not be counted toward a quorum." HALTOM CITY, TEX., MUNICIPAL CHARTER, art. III, § 3.08 (2001). Moreover, a quorum of a governmental body established by statute, or, in this case, by a municipal charter, is not reduced by virtue of a vacancy. *See* Tex. Att'y Gen Op. No. MW-562 (1982) at 3 (quorum of a board remains at all times a majority of the authorized

---

[2]You suggest that *Willmann* stands for the proposition that "when a person is removed from office, he does not continue to serve under Article 16, Section 17 of the Texas Constitution, unless there is 'inconvenience' that the public would suffer if the officer does not continue to serve until the next election." Request Letter, *supra* note 1, at 3. *Willmann* does not stand for this proposition, however. The court, after holding that article XVI, section 17 does not apply to a person who has been removed from office, states that "no vacancy occurred in the office of municipal court judge that resulted in public inconvenience to warrant the application of Article 16, Section 17 of the Texas Constitution." *Willmann*, 123 S.W.3d at 481. The court apparently added this language to address the interpretative commentary to article XVI, section 17 which states that "this provision was placed in the Texas Constitution, in part, to 'prevent public convenience from suffering because of a vacancy in the office.'" *Id.* As it stands, however, no legal standard of "public inconvenience" exists in Texas, and the application of any such standard would of necessity have to be made by a court, rather than by this office.

membership, although there are vacancies on a board) (citing *Thomas v. Abernathy County Line Indep. Sch. Dist.*, 290 S.W. 152, 153 (Tex. Comm'n App. 1927, judgm't adopted)). *Accord Walker v. Walter*, 241 S.W. 524 (Tex. Civ. App.–Fort Worth 1922, no writ); Tex. Att'y Gen. Op. No. JM-1127 (1989) at 4. As of this date, only two positions on the Haltom City municipal council are occupied. A quorum, as we have noted, consists of five members. Consequently, the charter prevents the convening of a quorum of the council until at least three of the five vacancies on the council have been filled. As you indicate, this situation will be resolved by the May 2004 election.

## S U M M A R Y

Members of a city council who have been removed from office in a recall election do not hold over until their successors are duly qualified. Only two seats on the Haltom City municipal council are currently occupied. Because the municipal charter of Haltom City defines a quorum as requiring the presence of at least five members of its council, the municipal council of Haltom City cannot convene a quorum until at least three of its five vacancies are filled by special election in May 2004.

Yours very truly,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee